## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal No.  05-320 (RWR)** |
| | **:** | |
| **MARIO SALVATIERRA-SAHONERO,** | **:** | |
| **Defendant.** | **:** | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this opposition to defendant's Motion to Suppress Physical Evidence.  In support of this opposition the government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

### BACKGROUND

_____The defendant has been charged in a four-count superseding indictment with Assaulting, Resisting, or Impeding Certain Officers or Employees, Unlawful Possession with Intent to Distribute Cannabis, and two counts of Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense.  In July of 2005, Metropolitan Police Department ("MPD") officers developed credible information that illegal narcotics, specifically quantities of marijuana, were being sold from XXX XXXXXXX XXXXXX, X.X., Washington, D.C.  A few days before July 27, 2005, MPD officers utilized a confidential informant ("CI") in an effort to purchase drugs from inside XXX XXXXXXX XXXXXX, X.X.  The CI went to the front door of the residence, knocked on the door, and spoke to an occupant of the residence about purchasing marijuana.  The CI gave the individual pre-recorded funds for the drug purchase.  The individual told the CI he had to go to the basement to get the marijuana.  The individual then exited the front door to the residence, and entered the basement area

of the residence through a door below the first floor stairs. The individual returned a short time later with a quantity of marijuana, which he provided to the CI.

On July 27, 2005, MPD officers prepared an affidavit in support of search warrant for XXX XXXXXXX XXXXXX, X.X., including the basement area. On that same day a District of Columbia Superior Court judge approved the issuance of that search warrant.

On July 28, 2005, MPD officers and Drug Enforcement Administration ("DEA") agents prepared to execute the search warrant at XXX XXXXXXX XXXXXX, X.X. At approximately 8:30 a.m., law enforcement officers were positioned at the rear of XXX XXXXXXX XXXXXX, X.X., at the first-floor entrance of the residence, and at the basement door entrance. Officers knocked on the doors, identified themselves as police officers, and announced that they had a search warrant. The officers waited twenty seconds. There was no response. Officers, a second time, knocked on the doors, identified themselves as police officers, and announced that they had a search warrant. Officers waited approximately twenty more seconds, and then forced open the first-floor door. Officers attempting to open the basement door were unable to immediately open that door. Once the first-floor door was open, a pit-bull dog charged the entry team, and one of the DEA agents shot and killed the dog. The bullet entered and exited the dog, went through the first floor, and ultimately was located in the basement area. Officers entered the first floor and detained two individuals.

Another group of officers entered the basement and announced that they were police officers. The officers were attired in clothing with the word "police" prominently displayed, and with their police badges visible. As officers entered the basement area, the defendant was observed running from the kitchen area, into the back bedroom of the basement. Officers ordered the defendant to

come from the back bedroom area of the basement.  After several seconds the defendant walked out of the back bedroom, armed with a Raven .25 caliber semi-automatic handgun, loaded with eight rounds of ammunition.  MPD Detective Allee Ramadhan, who was wearing an MPD windbreaker with the word "police" written on it, ordered the defendant to drop the weapon.  The defendant refused to drop the weapon.  Detective Ramadhan again ordered the defendant to drop the weapon. This time not only did the defendant not drop the weapon, he raised it towards Detective Ramadhan. Detective Ramadhan fired his service weapon at the defendant, striking him once in the lower abdomen.  The defendant subsequently was taken to Washington Hospital's Medstar Unit, where he was treated.  Recovered from the basement of XXX XXXXXXX XXXXXX, X.X. were the following items:  a Raven .25 caliber semi-automatic handgun located in the hall of the basement; a Hi-Point 9 millimeter handgun recovered from inside a safe in the basement kitchen; a Davis Industries 9 millimeter handgun recovered from inside the night stand in the bedroom the defendant was observed exiting; approximately 1628 grams of marijuana in 116 bags (most of the marijuana was found in the basement area); and $6,680.00 in U.S. Currency, a money counter, two scales, and several documents displaying the defendant's name on them.

## ARGUMENT

The defendant argues that the physical evidence in this case should be suppressed because the execution of the search warrant was not in conformity with the "knock and announce" rule, as set forth in 18 U.S.C. Section 3109.  The defendant's argument is without merit.

Pursuant to 18 U.S.C. Section 3109, a police officer may:

> break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when

necessary to liberate himself or a person aiding him in the execution
of the warrant**.**

The defendant contends that because the law enforcement officers "were [not] actually or constructively denied admittance," the officers should not have forcibly entered his residence. Contrary to the defendant's allegations, the officers acted reasonably in knocking and announcing their presence, then forcibly entering the residence after waiting a reasonable period of time. It is well settled that a law enforcement officer may forcibly enter a house in order to execute a search warrant "'if, after notice of his authority and purpose, he is refused admittance.'" Spriggs v. United States, 996 F.2d 320, 322 (D.C. Cir.) (quoting United States v. Bonner, 874 F.2d 822, 924 (D.C. Cir. 1989)), cert. denied, 510 U.S. 938 (1993). Constructive refusal of admittance is sufficient to permit law enforcement officers to forcibly enter a house under Section 3109. If the occupants do not admit the officers within a reasonable period of time, the officers may be deemed to be constructively refused admittance, and they may enter by using force. See, e.g., United States v. Garcia, 983 F.2d 1160, 1168 (1st Cir. 1993) (holding that constructive refusal of admission justified forced entry when police knocked, loudly announced authority and purpose, and waited ten seconds without response, as cocaine sought by warrant could be disposed of within seconds); United States v. Spikes, 158 F.3d 913, 926 (6th Cir. 1998) (finding that a delay between knock and announce and entry of four seconds was reasonable); United States v. Lipford, 203 F.3d 259, 270 (4th Cir. 2000).

Furthermore, in United States v. Banks, 540 U.S. 31, 40 (2003), the Supreme Court concluded that a delay of 15 to 20 seconds after a knock and announce was reasonable, under the totality of the circumstances, before a forced entry by officers executing a search warrant at the defendant's apartment, in view of the officers' reasonable suspicion of the exigency that there was

a risk of the imminent loss of easily disposable evidence. The Court rejected the defendant's argument that he was in the shower and this made the entry unlawful. <u>Id.</u> at 31. The Court explained that "what matters is the opportunity to get rid of the [drugs]," and 15-20 seconds was enough time to destroy the evidence by "flushing the [drugs] down the drain." <u>Id.</u> at 39.

In this case, officers knocked on the doors, identified themselves as police officers, and announced that they had a search warrant. The officers waited twenty seconds. There was no response. Officers, a second time, knocked on the doors, identified themselves as police officers, and announced that they had a search warrant. Officers waited approximately twenty more seconds, and then forced open the doors. The officers' conduct was certainly reasonable. <u>See</u> <u>Spriggs</u>, 996 F.2d at 323 ("officers could reasonably infer refusal after a delay of 15 seconds"). In short, because the officers complied with the knock-and-announce requirements of 18 U.S.C. Section 3109, there is no basis to suppress the physical evidence in this case.

Defendant's motion has raised a legal issue which the Court can decide without the necessity of a testimonial hearing. What the defendant disputes is that the law enforcement officers were not refused entry. That is a legal issue, but the defendant does not dispute the relevant facts. Accordingly, the Court can decide the defendant's motion from the pleadings.

WHEREFORE, the government respectfully requests that the Court deny defendant's motion.


Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. BAR NO.  451058


By: _____
ANTHONY SCARPELLI
Assistant United States Attorney
D.C. Bar No. 474711
555 4th Street, N.W.,  #4816
Washington, D.C. 20530
(202) 353-1679


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Anthony Martin, Esquire, this 7th day of December, 2005.


_____
ANTHONY SCARPELLI
Assistant United States Attorney