## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : **Case No:** 05-0320 (RWR) |
| | : |
| | : |
| MARIO SALVATIERRA-SAHONERO, | : |
| | : |
| Defendant. | : |

### MOTION TO SUPPRESS EVIDENCE
(Unlawful Execution of Search Warrant)

MARIO SALVATIERRA SAHONERO, through his attorney, Anthony D. Martin and moves pursuant to Fed. R. Crim. P 12(b)(3); 12(f) and 41(f) for reasons set forth below.

### *Procedural Posture*

Defendant's Motions are due on November 29th, 2005. A status hearing is set for Thursday, December 1st, 2005.

### *Background*

On July 27th, 2005 an affidavit signed by Devinci C. Wooden of the Metropolitan Police Department was presented to a Judge of the Superior Court for the District of Columbia. The affidavit formed the basis for a search warrant that was issued by the judge on that same day. The information supporting the affidavit came from a confidential source. There was no mention in the affidavit that any of the inhabitants at the target address were violent, had expressed a hatred for police or were otherwise considered dangerous. Indeed, the only indication that arms might have been present was

a boilerplate statement from the executing officer regarding the modus operandi of drug dealers in general.

Execution of the search warrant for 772 Harvard Street Northwest, Washington DC occurred at approximately 8:30 am on July 28th, 2005. (Atch 1)  The police officers entered the premises both at the  ground level and first floor with their guns drawn. Several shots were fired by the police upon their forcible entry.  MARIO SAHONERO was asleep at the time the police burst into the house.  As he opened his bedroom door he met a hail of bullets.  He was shot in the abdomen and laid bleeding in his bedroom.  In addition to the injuries suffered by Mr. SAHONERO, a resident's dog was killed.  No shots were fired at the police officers.  Shell casings were found outside the house and in the immediate entrance area at both levels. (Atch 2).

Three residents, including Mr. SAHONERO were arrested at the scene.  None of them received a copy of the warrant and return. (Atch 1).  Moreover, there is no executed affirmation regarding the inventory of the property taken from the premises. (Atch 1) The last point is noteworthy since there is considerable personal property that as of this date has not been accounted for.

Although the warrant was issued by a municipal court judge, citing possible violations of the DC Code,  MARIO SAHONERO was charged in a superseding indictment with various counts relating to drug distribution (marijuana) in violation of 21 USC § 841.  He is also charged with the use, carrying and possessing of a handgun in connection with a drug trafficking offense, in violation of 18 USC §924 (c)(1)(A)(ii).  At least one of the other residents has already been tried, convicted and sentence to nine (9) months incarceration (execution of sentence has been suspended)

*Argument*

**THE EXECUTION OF THE WARRANT WAS UNLAWFUL IN THAT THE POLICE OFFICERS FAILED TO COMPLY WITH THE "KNOCK AND ANNOUNCE " RULE CODIFIED AT 18 USC §3109.**

**<u>A. The Evidence Does Not Support the Contention That the Police Officers Were Denied Entry and Thus Justified In Forcibly Entering the Premises at 772 Harvard Street.</u>**

An officer authorized by warrant to enter a private dwelling must comply with the statutory "knock and announce" requirements as set forth at 18 USC §3109.  That section provides:

> The officer may break open any outer or inner door  or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, *after notice* of his authority and purpose, he is *refused admittance* or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Nowhere in the statement of facts contained in the initial charging document or in the superseding indictment, is there any suggestion that the officers were actually or constructively denied admittance.  *See, e.g. United States v. Hromada,* 49 F.3d 685, 689 (11th Cir. 1995)(constructive refusal of admission justified forced entry when officers knocked and announced, saw suspect standing motionaless in window, and forcibly entered after "less than a minute"), c.f. *United States v. Spriggs,* 996 F.2d 320, 322-322-323 (D.C. Cir. 1993)(constructive refusal of admission justified entry when DEA agents knocked only once at 7:45 am , announced themselves in "slightly above a normal tone of voice," and waited 15 seconds before breaking down door).

Indeed the evidence to date suggests that Mr. SAHONERO as well as the  other residents were still in bed when the police arrived.  Each was found in under clothes at

the time of the forced entry.  Hence, it is more likely that none of them had an opportunity to see who was at the door, let alone deny entry.  It is arguable that the upstairs residents become aware of the police presence, through their dog:  However, the same could not be said of Mr. SAHONERO, who was ensconced in the furthest and lowest part of the building.

Hence, even if one is inclined to give credence to the dubious statement that twenty (20) seconds passed before the police entered with guns blazing, that may not satisfy the requirements of Section 3109.  It has been held that a defendant must be given a reasonable period of time to determine who is at the door and to comply with a request to enter, especially early in the morning.  *United States v. Granville*, 222 F.3d 1214, 1218-19 (9th Cir. 2000).

## B. There is No Evidence to Support a "No Knock Entry" Based on Exigent Circumstances.

No knock entries have been sanctioned in cases of exigent circumstances. However, in order to circumvent the requirements of 18 USC §3109 the police have to show that there was a "reasonable suspicion" that knocking and announcing would be dangerous, futile or destructive to the purposes of the investigation.  *See, United States v. Geraldo,* 271 F.3d 1112, 1118 (D.C. Cir. 2001)(compliance §3109 unnecessary because officers had information  that one resident kept firearm to protect against intruders and fact that agents assembled SWAT team and used a "flash bang" showed they suspected danger).

However, as previously mentioned, there was no information contained in the affidavit supporting the search warrant that any of the individuals residing at 772 Harvard

Street had a history of violence. Moreover, none were reported to have expressed any animosity toward police. While it is true that there was language in the affidavit to support the search warrant suggesting that weapons might be on the premises; that language is boilerplate. It has been held that officers are not excused from complying with §3109 by reciting "generalizations and sterotypes" about the characteristics of drug dealers. *United States v. Granville*, 222 F.3d 1214, 1219 (9th Cir. 2000); United *States v. Moore*, 91 F.3d 96,97 (10th Cir. 1996).

With respect to the anticipated argument that the officers' concern also centered on the destruction of evidence, it should be remembered that the police were aware that they were dealing with marijuana distributors not cocaine dealers. Unlike cocaine, the destruction of a large quantity of marijuana in a short period of time is not easily accomplished. As a result, this argument has not carried the government's case very far in other courts. *See, e.g., United States v. Tavares*, 224 F.3d 911, 917 (8th Cir. 2000) (officers not excused from complying with 3109 requirement because large quantity of drugs made imminent destruction unlikely). In short, while the "knock and announce" requirements may be relaxed in some instances, there should not be a blanket exception for investigations involving drug suspects. *See, Richards v. Wisconsin,* 520 US 385, 390-94 (1997)( rejecting a blanket exception to the knock and announce requirement in felony drug cases); *United States v. Tavares*, 224 F.3d 911, 916-917 (8th Cir. 2000)

*Conclusion*

Given the absence of any reports or other indication that the police were denied entry to the premises upon arrival, coupled with the lack of evidence that there was some exigent circumstance, the entry into -772 Harvard Street was constitutionally and statutorily defective.  These procedural defects are of constitutional proportion and as such should result in the suppression of all evidence seized on July 28th, 2005.

*Prayer*

WHEREFORE, MARIO SAHONERO respectfully requests that his motion be granted and that an order issue preventing the government's use or mention of the weapons and marijuana seized from 772 Harvard Street on July 28th, 2005..

Respectfully submitted,

By:_____
Anthony D. Martin, 362-537
7841 Belle Point Drive
Greenbelt, MD 20770
(301) 220-3700; (301) 220-0791(fax)
Attorney for Defendant

## POINTS AND AUTHORITIES

1.    Fed. R. Crim. P 12(b)(3)(C)
2.    Fed R. Crim. P. 41(f)
3.    Cases cited throughout text

## CERTIFICATE OF SERVICE

I HERBY CERTIFY that on this Tuesday, November 29, 2005, a copy of the foregoing
was sent by first class mail or e-mailed to:

       Anthony Scarpelli
       Assistant United States Attorney
       555 4th Street, NW, Room 4824
       Washington, DC 20001

_____

       Anthony D. Martin

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Case No:** 05-0320 (RWR) |
| | : | |
| | : | |
| MARIO SALVATIERRA-SAHONERO, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER**

This matter is before the court on a motion to suppress evidence.   After having considered the record to date, the motion, the opposition filed thereto, the testimony of witnesses, as well as the arguments of counsel,

It appears to the court that the knock and announce requirements of 18 USC §3109 have not been met.

WHEREFORE, the  defendant's motion is GRANTED and

IT IS ORDERED, this _____ day of _____ that the government not make mention of or introduce any evidence seized as a result of the search of the premises at 772 Harvard Street, NW Washington, DC.

_____
J U D G E