UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Case No: 05-0320 (RWR) |
| MARIO SALVATIERRA-SAHONERO, | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE**
(Unlawfully Executed Search Warrant)

MARIO SALVATIERRA SAHONERO, through his attorney, Anthony D. Martin supplements his motion to suppress evidence and moves pursuant to Fed. R. Crim. P 12(b)(3); 12(f) and 41(f) for reasons set forth below.

*Procedural Posture*

Defendant's Motions are due on January 8th, 2006. The motions' hearing is set for January 17th, 2006. No trial date has been set at this time.

*Background*

On July 27th, 2005 an affidavit signed by Devinci C. Wooden of the Metropolitan Police Department was presented to a Judge of the Superior Court for the District of Columbia. The affidavit formed the basis for a search warrant that was issued by the judge on that same day. The information supporting the affidavit purportedly came from a confidential source. There was no mention in the affidavit that any of the inhabitants at the target address were violent, had expressed a hatred for police or were otherwise

considered dangerous. Indeed, the only indication that arms might have been present was a boilerplate statement from the executing officer regarding the modus operandi of drug dealers in general.

Execution of the search warrant for 772 Harvard Street Northwest, Washington DC occurred at approximately 8:30 am on July 28th, 2005. (Atch 1) The police officers entered the premises both at the ground level and first floor with their guns drawn. Several shots were fired by the police upon their forcible entry. MARIO SAHONERO was asleep at the time the police burst into the house. As he opened his bedroom door he met a hail of bullets. He was shot in the abdomen and laid bleeding in his bedroom. In addition to the injuries suffered by Mr. SAHONERO, a resident's dog was shot multiple times and killed. The dog's body was found a few feet from the entryway to the building. No shots were fired at the police officers. Shell casings were found outside the house and in the immediate entrance area at both levels.

Three residents, including Mr. SAHONERO were arrested at the scene. None of them received a copy of the warrant and return. Although the warrant was issued by a municipal court judge, citing possible violations of the District of Columbia Code, MARIO SAHONERO was the only arrestee charged in a superseding indictment with various counts relating to drug distribution (marijuana) in violation of 21 USC § 841. He is also the only resident who was shot by the police. Although several guns were found at different levels and rooms throughout the building, only Mr. SAHONERO is charged with the use, carrying and possessing of a handgun in connection with a drug trafficking offense, in violation of 18 USC §924 (c)(1)(A)(ii). At least one of the other residents has

already been tried, convicted and sentence to nine (9) months incarceration (execution of sentence has been suspended).

*Argument*

**THE EXECUTION OF THE WARRANT WAS UNLAWFUL IN THAT THE POLICE OFFICERS FAILED TO COMPLY WITH THE "KNOCK AND ANNOUNCE "RULE CODIFIED AT 18 USC §3109 and DC CODE §§ 23-524(a) (1996) and 33-565(g) (1984 Supp).**

**A. The Evidence Does Not Support the Contention That the Police Officers Were Denied Entry and Thus Justified In Forcibly Entering the Premises at 772 Harvard Street.**

An officer authorized by warrant to enter a private dwelling must comply with the statutory "knock and announce" requirements as set forth at 18 USC §3109. That section provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, *after notice* of his authority and purpose, he is *refused admittance* or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Similar language is found in the DC Code at §§ 23-524(a) (1996) and 33-565(g) (1984 Supp):

> (a) An officer executing a warrant directing a search of a dwelling house or other building or a vehicle shall execute such warrant in accordance with section 3109 of Title 18, United States Code.
> (b) An officer executing a warrant directing a search of a person shall give, or make reasonable effort to give, notice of his identity and purpose to the person, and, if such person thereafter resists or refuses to permit the search, such person shall be subject to arrest by such officer pursuant to section 23-581 (a) for violation of section 432 of the Revised Statutes of the United States relating to the District of Columbia (D.C. Official Code, sec. 22- 405) (resisting a police officer) or other applicable provision of law.

The District's Code is relevant in this instance because the warrant was issued by a judicial officer of the Superior Court for the District of Columbia. The statutes make

clear that in this jurisdiction, in addition to embracing the federal "knock and announce" principle, officers may not "break and enter" into premises to execute a search warrant unless they have announced their identity and purpose *and* been denied entry. *United States v. Goddard,* 113 Wash. D.L. Rptr. 537 (D.C. Super. Ct March 19, 1985)(Walton, J.)

It is universally agreed that the "knock and announce" requirement ensures the privacy and safety of the individuals in their homes, as well as the police officers who may otherwise be mistaken for unauthorized intruders. Moreover, it guards against the needless destruction of private property and "symbolizes the respect for individual privacy summarized in the adage that a man's home is his castle." *Poole v. United States,* 630 A.2d 1109, 1116 (D.C. 1993). *See also, Sabbath v. United States,* 391 US 585, 589 (1968). Because the purpose of the rule is to protect privacy and safety, courts presented with claims of statutory violations must carefully scrutinize the circumstances of the entry. *Culp v. United States,* 624 A.2d 460, 466 (D.C. 1993)(Rogers, C.J. concurring).

Although the police need not wait until admittance is affirmatively refused, they must be able to infer a constructive refusal from the occupants' actions or inactions before entering. *Wiliams v. United States,* 576 A.2d 700, 703 (DC 1990); DC Code §33-565(g). Nothing in any of the statements or reports following the execution of the warrant suggests that the officers were refused entry or that they heard furtive movement suggesting the destruction of evidence or the attempted escape of the residents within. Moreover, nowhere in the statement of facts contained in the initial charging document or in the superseding indictment, is there any suggestion that the officers were actually or

constructively denied admittance. *See, e.g. United States v. Hromada,* 49 F.3d 685, 689 (11th Cir. 1995)(constructive refusal of admission justified forced entry when officers knocked and announced, saw suspect standing motionless in window, and forcibly entered after "less than a minute"), c.f. *United States v. Spriggs,* 996 F.2d 320, 322-322-323 (D.C. Cir. 1993)(constructive refusal of admission justified entry when DEA agents knocked only once at 7:45 am, announced themselves in "slightly above a normal tone of voice," and waited 15 seconds before breaking down door).

Indeed the evidence to date suggests that Mr. SAHONERO as well as the other residents were still in bed when the police arrived. Each was found in underwear at the time of the forced entry. (Atch 1)  Hence, it is more likely that none of them had an opportunity to see who was at the door, let alone deny entry.  It is arguable that the upstairs residents become aware of the police presence, through their dog:  However, the same could not be said of Mr. SAHONERO, who was ensconced in the lowest part of the building, furthest from the street.

Hence, even if one is inclined to give credence to the dubious statement that twenty (20) seconds passed before the police entered with guns blazing, that is not enough to satisfy the requirements of Section 3109 or Section 23-524(a).  It has been held that a defendant must be given a reasonable period of time to determine who is at the door and to comply with a request to enter, especially early in the morning.  *Poole v. United States*, 630 A.2d 1109, 1117; *Griffin v. United States*, 618 A.2d 114, 122 (D.C 1992) (When no actions can be detected within a premises, the cases suggest that a lapse of at least a minute is required to find a denial of admittance) *United States v. Granville*, 222 F.3d 1214, 1218-19 (9th Cir. 2000).

5

It is well settled that evidence seized in violation of the knock and announce principle must be suppressed. *Miller v. United States,* 357 US 301, 314 (1958); *Griffin v. United States*, 618 A.2d 114, 125 (D.C 1992). In deciding whether there has been a violation, the court is directed to apply an objective test. *Griffin,* 618 A.2d at 118 n.7 (whether the circumstances were such as would convince a reasonable person that permission to enter had been refused.")

**B. There is No Evidence to Support a "No Knock Entry" Based on Exigent Circumstances.**

No knock entries have been sanctioned in cases of exigent circumstances. However, in order to circumvent the requirements of 18 USC §3109 the police have to show that there was a "reasonable suspicion" that knocking and announcing would be dangerous, futile or destructive to the purposes of the investigation. *See, United States v. Geraldo,* 271 F.3d 1112, 1118 (D.C. Cir. 2001)(compliance §3109 unnecessary because officers had information that one resident kept firearm to protect against intruders and fact that agents assembled SWAT team and used a "flash bang" showed they suspected danger). *Poole v. United States,* 630 A.2d 1109, 1118 (D.C. 1993)(Evidence that the suspect merely possesses a weapon is insufficient to justify a forced entry).

However, as previously mentioned, there was no information contained in the affidavit supporting the search warrant that any of the individuals residing at 772 Harvard Street had a history of violence. Moreover, none were reported to have expressed any animosity toward police. While it is true that there was language in the affidavit to support the search warrant suggesting that weapons might be on the premises; that language is boilerplate. It has been held that officers are not excused from complying

6

with §3109 by reciting "generalizations and stereotypes" about the characteristics of drug dealers. *Richards v. Wisconsin*, 117 S.Ct 1416, 1421 (1997); *United States v. Granville*, 222 F.3d 1214, 1219 (9th Cir. 2000); United *States v. Moore*, 91 F.3d 96,97 (10th Cir. 1996).

With respect to the anticipated argument that the officers' concern also centered on the destruction of evidence, it should be remembered that the police were aware that they were dealing with marijuana distributors not cocaine dealers. Unlike cocaine, the destruction of a large quantity of marijuana in a short period of time is not easily accomplished. As a result, this argument has not carried the government's case very far in other courts. *See, e.g.*, *United States v. Tavares*, 224 F.3d 911, 917 (8th Cir. 2000) (officers not excused from complying with 3109 requirement because large quantity of drugs made imminent destruction unlikely). In short, while the "knock and announce" requirements may be relaxed in some instances, there should not be a blanket exception for investigations involving drug suspects. *See, Richards v. Wisconsin,* 520 US 385, 390-94 (1997)( rejecting a blanket exception to the knock and announce requirement in felony drug cases); *United States v. Tavares*, 224 F.3d 911, 916-917 (8th Cir. 2000)

### *Conclusion*

Given the absence of any reports or other indication that the police were denied entry to the premises upon arrival, coupled with the lack of evidence that there was some exigent circumstance, the entry into 772 Harvard Street was constitutionally and statutorily defective. These procedural defects are of constitutional proportion and as such should result in the suppression of all evidence seized on July 28th, 2005.

*Prayer*

WHEREFORE, MARIO SAHONERO respectfully requests that his motion be granted and that an order issue preventing the government's use or mention of the weapons and marijuana seized from 772 Harvard Street on July 28th, 2005..

                                         Respectfully submitted,

                                         By:_____
                                         Anthony D. Martin, 362-537
                                         BELLE POINT OFFICE PARK
                                         7841 Belle Point Drive
                                         Greenbelt, MD 20770
                                         (301) 220-3700; (301) 220-0791(fax)
                                         Attorney for Defendant

## POINTS AND AUTHORITIES

1.    Fed. R. Crim. P 12(b)(3)(C)
2.    Fed R. Crim. P. 41(f)
3.    DC Code at §§ 23-524(a) (1996) and 33-565(g) (1984 Supp)
4.    Cases cited throughout text

**CERTIFICATE OF SERVICE**

I HERBY CERTIFY that on this Sunday, January 08, 2006, a copy of the foregoing was sent by first class mail or e-mailed to:

>Anthony Scarpelli
>Assistant United States Attorney
>555 4th Street, NW, Room 4824
>Washington, DC 20001

--------------------------------------------
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Anthony D. Martin

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | **Case No:** 05-0320 (RWR) |
| : | |
| MARIO SALVATIERRA-SAHONERO, : | |
| : | |
| Defendant. : | |
| : | |

**ORDER**

This matter is before the court on a motion to suppress evidence. After having considered the record to date, the motion, the opposition filed thereto, the testimony of witnesses, as well as the arguments of counsel,

It appears to the court that the knock and announce requirements of 18 USC §3109 have not been met.

WHEREFORE, the defendant's motion is GRANTED and

IT IS ORDERED, this _____ day of _____ that the government not make mention of or introduce any evidence seized as a result of the search of the premises at 772 Harvard Street, NW Washington, DC.

_____
J  U  D  G  E