UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No.  05-320 (RWR) |
| : | |
| MARIO SALVATIERRA-SAHONERO, : | |
| Defendant. : | |

**GOVERNMENT'S MOTION TO ADMIT DEFENDANT'S CELLULAR TELEPHONE
AND INFORMATION CONTAINED WITHIN THE CELLULAR TELEPHONE**

  The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this motion to admit certain evidence in its case-in-chief, specifically the defendant's cellular telephone and the photographs and video contained within the cellular telephone.  In support of this motion the government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

**BACKGROUND**

  The defendant has been charged in a four-count superseding indictment with Assaulting, Resisting, or Impeding Certain Officers or Employees, Unlawful Possession with Intent to Distribute Cannabis, and two counts of Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense.  In July of 2005, Metropolitan Police Department ("MPD") officers developed credible information that illegal narcotics, specifically quantities of marijuana, were being sold from 722 Harvard Street, N.W., Washington, D.C.  A few days before July 27, 2005, MPD officers utilized a confidential informant ("CI") in an effort to purchase drugs from inside 772 Harvard Street, N.W.  The CI went to the front door of the residence, knocked on the door, and spoke to an occupant of the residence about purchasing marijuana.  The CI gave the individual pre-recorded funds for the drug purchase.  The individual told the CI he had to go to the basement to get the marijuana.  The

individual then exited the front door to the residence, and entered the basement area of the residence through a door below the first floor stairs. The individual returned a short time later with a quantity of marijuana, which he provided to the CI.

On July 27, 2005, MPD officers prepared an affidavit in support of search warrant for 772 Harvard Street, N.W., including the basement area. On that same day a District of Columbia Superior Court judge approved the issuance of that search warrant.

On July 28, 2005, MPD officers and Drug Enforcement Administration ("DEA") agents prepared to execute the search warrant at 772 Harvard Street, N.W. At approximately 8:30 a.m., law enforcement officers were positioned at the rear of 772 Harvard Street, N.W., at the first-floor entrance of the residence, and at the basement door entrance. Officers knocked on the doors, identified themselves as police officers, and announced that they had a search warrant. The officers waited twenty seconds. There was no response. Officers, a second time, knocked on the doors, identified themselves as police officers, and announced that they had a search warrant. Officers waited approximately twenty more seconds, and then forced open the first-floor door. Officers attempting to open the basement door were unable to immediately open that door. Once the first-floor door was open, a pit-bull dog charged the entry team, and one of the DEA agents shot and killed the dog. The bullet entered and exited the dog, went through the first floor, and ultimately was located in the basement area. Officers entered the first floor and detained two individuals.

Another group of officers entered the basement and announced that they were police officers. The officers were attired in clothing with the word "police" prominently displayed, and with their police badges visible. As officers entered the basement area, the defendant was observed running from the kitchen area, into the back bedroom of the basement. Officers ordered the defendant to

come from the back bedroom area of the basement. After several seconds the defendant walked out of the back bedroom, armed with a Raven .25 caliber semi-automatic handgun, loaded with eight rounds of ammunition. MPD Detective Allee Ramadhan, who was wearing an MPD windbreaker with the word "police" written on it, ordered the defendant to drop the weapon. The defendant refused to drop the weapon. Detective Ramadhan again ordered the defendant to drop the weapon. This time not only did the defendant not drop the weapon, he raised it towards Detective Ramadhan. Detective Ramadhan fired his service weapon at the defendant, striking him once in the lower abdomen. The defendant subsequently was taken to Washington Hospital's Medstar Unit, where he was treated.

Recovered from the basement of 772 Harvard Street, N.W. were the following items: a Raven .25 caliber semi-automatic handgun located in the hall of the basement; a Hi-Point 9 millimeter handgun recovered from inside a safe in the basement kitchen; a Davis Industries 9 millimeter handgun recovered from inside the night stand in the bedroom the defendant was observed exiting; approximately 1628 grams of marijuana in 116 bags (most of the marijuana was found in the basement area); and $6,680.00 in U.S. Currency, a money counter, two scales, and several documents displaying the defendant's name on them. Also, a cellular telephone was recovered inside the defendant's bedroom, on the night stand. Contained within the cellular telephone are two photographs (taken on July 27, 2005) of an individual holding a .25 caliber semi-automatic handgun, and a video of the defendant (see Government's Exhibits 1, 2, 3).

## ARGUMENT

A. Theory of Res Gestae

The photographs and video are part of the case before the Court, and should be admitted

under the theory of res gestae. "Under the theory of res gestae, evidence of prior crimes can be admitted when the prior crime is so blended or connected, with the one[s] on trial as that proof of one incidentally involves the other[s]; or explains the circumstances thereof; or tends logically to prove any element of the crime charged." United States v. Riebold, 135 F.3d 1226, 1229 (8th Cir.) (en banc) (quoting United States v. Forcelle, 86 F.3d 838, 841 (8th Cir. 1996), cert. denied, 524 U.S. 944 (1998). "When evidence is admitted under res gestae, Rule 404(b) is not implicated." Id. "Evidence that tends logically to prove any element of the crime charged, . . . is admissible as an integral part of the immediate context of the crime and is not governed by Rule 404(b)." Moore v. United States, 178 F.3d 94, 1000 (8th Cir. 1999). Evidence of a prior crime does not have to establish an element of a charged offense to be admissible under the res gestae doctrine, if it explains the context of the charged crime, and thus tends logically to prove any element of the crime charged. United states v. Honken, 378 F. Supp. 2d 928, 941 (N.D. Iowa 2004).

The District of Columbia Court of Appeals has routinely admitted such evidence. In Ali v. United States, 581A.2d 368, 376 (D.C. 1990), the court admitted photographs of the defendant possessing a "similar" shotgun, and eyewitness testimony that the defendant previously possessed a duffel bag which contained a shotgun. "The testimony just summarized, together with eyewitness testimony that the murder was committed by appellant with a sawed-off shotgun and that he was in possession of a similar bag the night of the murder, sufficiently connect the sawed-off shotgun to appellant to make the prior sawed-off shotgun possession relevant to the Lovells murder and thus not an independent crime." Id. "This evidence, consisting of [eyewitness'] testimony and the photographs of a sawed-off shotgun and shells, was not evidence of other crimes or bad acts and subject to Drew. Rather, these items constituted evidence of the crime charged." Id. at 376-77.

Also, in McConnaughey v. United States, 804 A.2d 334, 338-39 (D.C. 2002), the Court of Appeals addressed a similar issue. In McConnaughey, appellant argued that the trial court abused its discretion in admitting Melvin Seals' (a victim of defendant's shooting spree) grand jury testimony that he saw appellant in possession of a chrome-colored automatic pistol on two prior occasions. Id. at 338.

> Appellant argued that the "tenuous" temporal connection between the crime and the prior sightings of the weapon was not sufficient to establish a "link" between the murder and appellant's possession of the gun, as required by King v. United States, 618 A.2d 727 (D.C.1993). [ In King, the Court of Appeals held] that, because the evidence of prior possession of the gun was sufficiently linked to both appellant and the crime charged, the trial court acted within its discretion in admitting the grand jury testimony. See King, 618 A.2d at 729; accord, e.g., (Phillip) Johnson v. United States, 701 A.2d 1085, 1092 (D.C.1997).
>
> First, the gun was sufficiently linked to appellant. King, 618 A.2d at 729. Seals testified that he twice saw appellant with a chrome-colored .32 caliber automatic in his possession. This testimony sufficiently connected appellant to the gun that may have been the murder weapon. See, e.g., Busey v. United States, 747 A.2d 1153, 1165 (D.C.2000); Johnson, 701 A.2d at 1092; Coleman v. United States, 379 A.2d 710, 712 (D.C.1977).
>
> Second, the gun was sufficiently linked to the crimes charged. King, 618 A.2d at 729. Although no murder weapon was recovered, testimony established that the bullets used to kill Jones came from a .32 caliber semi-automatic pistol. Other evidence established that bullets and shell casings of the same caliber were recovered from the areas where both Jones and Seals were shot, and a holster and a box of .32 caliber ammunition of the same make were discovered in a bedroom used mainly by appellant. In addition, Lola McConnaughey testified that on the day after the shootings she saw a silver gun hidden in the basement of the house where appellant lived. This evidence sufficiently connected the gun to the two shootings. See, e.g., Johnson, 701 A.2d at 1092; Ali v. United States, 581 A.2d 368, 374-375 (D.C.1990), cert. denied, 502 U.S. 893, 112 S.Ct. 259, 116 L.Ed.2d 213 (1991).

The length of time between the sighting of the gun and the shootings in this case, as the trial court correctly noted, "becomes less relevant" in light of the evidence strongly suggesting that the gun that Seals saw was the gun with which Jones and Seals were shot. Id.

In Johnson, a photograph of the defendant holding a revolver of the same caliber as the gun used in a murder was held admissible, even though the photograph was more than a year old, because the requisite link was made between the gun depicted in the photograph and the gun used in the crime. Johnson, 701 A.2d at 1092 (citing King, 618 A.2d at 728).

In the instant case, the defendant's cellular telephone was recovered on the night stand, in his bedroom. This is the same bedroom he retreated to arm himself with the Raven .25 caliber firearm. Located inside the telephone is a video of the defendant, standing in the basement of 772 Harvard Street, N.W. Washington, D.C. Also, there are two photographs of what appears to be the Raven .25 caliber firearm. The photographs were taken July 27, 2005, the day before the police executed the search warrant at his residence and the defendant raised the gun towards Detective Ramadhan. Furthermore, the photographs appear to have been taken by the individual holding the firearm. The government anticipates that there will be expert testimony that the firearm in the photograph is, at a minimum, similar to the one used by the defendant in this case. The photographs are intertwined with the crime the defendant is being charged with. The defendant has maintained that he never possessed the handgun, and that he did not have any weapons in his residence (both in an audio taped statement to police and under oath on January 17, 2006). The central issue in this case is whether the defendant armed himself with the Raven .25 caliber firearm. The photographs and video explain the context of the charged crime, and thus tend logically to prove an element of

the crime charged . Therefore, the evidence is not governed by Rule 404(b), and is admissible under the theory of res gestae.

**B. Other Crimes and Bad Acts by the Defendant**

Assuming arguendo, that the Court does not find that the photographs and video admissible under the theory of res gestae, the government seeks to introduce the facts and circumstances surrounding that evidence pursuant to Rule 404(b).

Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character, but is admissible for any non-propensity purpose, including motive, intent, plan, knowledge, and absence of mistake. See United States v. Bowie, 232 F.3d 923, 926, 930 (D.C. Cir. 2000). Importantly, this rule is one of "inclusion rather than exclusion." Id. at 929. As the Court of Appeals has noted en banc, while the first sentence of the rule is framed restrictively, the rule is actually quite permissive, prohibiting the admission of other crimes evidence in but one circumstance - - for the purpose of proving that a person's actions conformed to his character. United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998). In short, Rule 404(b) bars "not evidence as such, but a theory of admissibility." Id. at 1202. As the Court stated in United States v. Cassell, 292 F.3d 788, 791 (D.C. Cir. 2002) (citing United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original), "[t]rue, the evidence may tend to show that [defendant] is a person of bad character, but Rule 404(b) does not thereby render it inadmissible. To reiterate what we have stated before . . . under Rule 404(b), 'any purpose for which bad acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character.'"

Such evidence is of course subject like all evidence to the strictures of Rule 403. Thus, the admissibility of other crimes evidence rests on a two-step inquiry: 1) whether the other crimes

evidence is relevant to an issue other than the defendant's character or propensity, and if so, 2) whether the evidence is admissible under Rule 403 because its probative value is not substantially outweighed by the danger of unfair prejudice. United States v. Moore, 732 F.2d 983, 987 (D.C. Cir. 1984). As its language reflects, Rule 403 "tilts, as do the rules as a whole, toward the admission of evidence in close cases" -- even when other crimes evidence is involved. Moore, 732 F.2d at 989. See Huddleston v. United States, 485 U.S. 681, 688-89 (1988) ("Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence").[1]

In the instant case, the government must prove that the defendant possessed the gun and ammunition that were ultimately found inside the defendant's residence. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently. See Criminal Jury Instructions (the "Red Book"), Instruction 4.29. The defendant has adamantly contended that he did not posses the gun recovered from behind the bathroom door of his living area. The evidence described above will show that it is highly probative of the defendant's knowingly and intentional possession of the gun and ammunition in this case. Moreover, this evidence will also establish that the defendant's possession of the gun and ammunition were not the result of mistake or accident.

---

[1] As for the burden that must be met in presenting other crimes evidence, the Court is not required to make any sort of preliminary finding or to weigh the evidence as to the other crimes. Indeed, as the Supreme Court has emphasized, "[i]n determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence." Huddleston, 485 U.S. at 690 (emphasis added). Instead, the trial court "simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact [other crimes evidence] . . . by a preponderance of the evidence." Id. at 690. And in doing so, the trial court must consider all the pieces of evidence presented to the jury, both as to the other crimes evidence and the charged conduct. Ibid.

The significant probative value of the evidence here is clearly <u>not</u> outweighed by the danger of unfair prejudice in this case. Whatever prejudice the defendant may perceive, can adequately be addressed through the use of a limiting instruction to the jury.

Numerous cases in this Circuit and others demonstrate that evidence of a prior or subsequent possession of a firearm is admissible as 404(b) evidence. <u>See</u> <u>United States v. Cassell</u>, 292 F.3d 788, 791 (D.C. Cir. 2002) (evidence of defendant's prior gun possessions admissible under Rule 404(b) "because it was relevant to show knowledge of, and intent to possess, the firearms recovered from his room"). As the Court of Appeals noted in <u>Cassell</u>, "[w]e have previously held that 'in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged.'" <u>Id</u>. at 793 (citation omitted).

In <u>United States v. Brown</u>, 16 F.3d 423, 424-26 (D.C. Cir. 1994), the defendant had been charged with multiple drug and firearms charges. The police executed a search warrant at a co-defendant's home and recovered drugs and guns in a safe, and the co-defendant and fingerprint evidence indicated the items in the safe belonged to defendant Brown. <u>Id</u>. at 423-26. When arrested three months later, defendant Brown was carrying a pistol and pager, and additional charges for this gun were added to a superceding indictment. <u>Id</u>. at 424. In addressing the conceded misjoinder, the Court held that the misjoinder was not prejudicial because, among other reasons, the evidence of the additional firearm on defendant Brown's person would have been admissible under Rule 403(b) in a trial of the original charges for the items in the safe. <u>Id</u>. at 429, 430-32. Specifically, the Court found that the gun recovered during the arrest was cross-admissible under 404(b) "because it was relevant to show intent, knowledge or absence of mistake with respect to the firearms found in the

safe during the November Search." Id. at 431.  As the Court commented in next finding the evidence admissible under Rule 403, the evidence of defendant Brown's subsequent possession of a firearm "tends to make it less probable that the pistols found in the safe during the November Search were there by mistake or without intent." Id. at 432.  While the fact that defendant Brown was arrested while carrying a pistol "could be a very prejudicial fact . . . . this prejudicial fact has considerable probative weight.  Therefore, the gun, while a close call, also was cross-admissible." Id. at 432.  See also United States v. Toms, 136 F.3d 176, 183-84 & nn. 11-12 (D.C. Cir. 1998) (in constructive possession case, evidence of prior drug activities and firearm possession was admissible to show intent, motive, knowledge, and/or absence of mistake with respect to the instant firearm).

Several decisions from other circuits have similarly held that possession of a firearm on one occasion is probative of possession on an earlier or later occasion.  See United States v. Mills, 29 F.3d 545, 548-49 (10th Cir. 1994) (in Section 922(g)(1) prosecution, evidence of earlier possession of firearms properly admitted under Rule 404(b) as proof of knowing possession); United States v. Brown, 961 F.2d 1039, 1042 (2d Cir. 1992) (in prosecution for possession of unregistered machine gun, evidence of defendant's simultaneous and subsequent possession of handguns properly admitted under Rule 404(b) as proof of defendant's knowledge and absence of mistake or accident); United States v. Gomez, 927 F.2d 1530, 1553-54 (11th Cir. 1991) (in trial involving carrying a firearm in connection with a drug trafficking offense, evidence of prior gun possession properly admitted under Rule 404(b) to prove, inter alia, absence of "accident or coincidence"); United States v. Williams, 895 F.2d 1202, 1204-06 (8th Cir. 1990) (in trial for carrying a firearm in connection with a drug trafficking crime, evidence of prior gun possession obtained from the execution of search warrants was properly admitted over Rule 403 objection because prior possession was probative of knowledge

and absence of mistake); United States v. Teague, 737 F.2d 378, 379-81 (4th Cir. 1984) (in prosecution of a felon for possession of a gun, evidence of his subsequent offer to sell a gun was admissible under Rule 404(b) as evidence of intent, knowledge, and absence of mistake in his possession of the gun). The photograph showing an arm holding what appears to be the Raven .25 caliber firearm should be admitted, therefore, to prove that the defendants' possession was knowing and intentional, as well as to show absence of mistake or accident.[2]

---

[2] The instant case is different than United State v. Linares, 367 F.3d 941 (D.C. Cir. 2004). In Linares, the court concluded that it was not proper for the government to introduce evidence pursuant to Rule 404(b), in a 18 U.S.C. § 922(g) case, when constructive possession was not in dispute as the trial testimony (if believed) established that the defendant had the firearm in his hand when he fired the shots. Id. at 948. Further, the Court concluded that the Rule 404(b) evidence was inadmissible because the government did not have to prove intent in the single-count § 922(g) case. Id. Moreover, the Rule 404(b) evidence was quite stale, over four years old. Here, however, the defendant is charged with 18 U.S.C. § 924(c). The government must therefore prove the defendant's intent, i.e., that he possessed the firearm in furtherance of the drug trafficking offense. Moreover, in order to prove the drug trafficking offense, the government must prove that the defendant possessed the marijuana with the intent to distribute it. Furthermore, there were two additional firearms found in the defendant's residence, neither one of which was ever seen in the defendant's hands. One of these firearms makes out the second § 924(c) count in the indictment. The government's theory on that count is that the defendant constructively possessed that firearm. The recent photograph found in the cell phone thus goes to both intent and knowledge in a manner that the Linares 404(b) evidence did not.

WHEREFORE, for the reasons stated above, the United States respectfully submits that the government's motion to admit cellular telephone and information contained within the cellular telephone be admitted under the theory of res gestae, or in the alternative as other crimes evidence be granted.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. BAR NO.  451058


By: _____
ANTHONY SCARPELLI
Assistant United States Attorney
D.C. Bar No. 474711
555 4th Street, N.W.,  #4816
Washington, D.C. 20530
(202) 353-1679


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Anthony Martin, Esquire, this 27th day of January, 2006.

_____
ANTHONY SCARPELLI
Assistant United States Attorney