UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.   : | Criminal Case No. 05-320 (RWR) |
| : | |
| MARIO SALVATIERRA SAHONERO, : | |
| Defendant. : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case.

## BACKGROUND

The defendant has been charged in a four-count superseding indictment with Assaulting, Resisting, or Impeding Certain Officers or Employees; Unlawful Possession with Intent to Distribute Cannabis; and two counts of Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense. In July of 2005, Metropolitan Police Department ("MPD") officers developed credible information that illegal narcotics, specifically marijuana, were being sold from 772 Harvard Street in Northwest Washington, D.C. A few days before July 27, 2005, MPD officers utilized a confidential informant ("CI") in an effort to purchase drugs from inside 772 Harvard Street, N.W. The CI went to the front door of the residence, knocked on the door, and spoke to an occupant of the residence about purchasing marijuana. The CI gave the individual pre-recorded funds for the drug purchase. The individual told the CI that he had to go to the basement to get the marijuana. The

1

individual then exited the front door to the residence and entered the basement area of the residence through a door below the first-floor stairs. The individual returned a short time later with a quantity of marijuana, which he provided to the CI.

On July 27, 2005, MPD officers prepared an affidavit in support of a search warrant for 772 Harvard Street, N.W., including the basement area. On that same day, a District of Columbia Superior Court judge approved the issuance of the search warrant.

On July 28, 2005, MPD officers and Drug Enforcement Administration ("DEA") agents prepared to execute the search warrant at 772 Harvard Street, N.W. At approximately 8:30 a.m., law enforcement officers were positioned at the rear of 772 Harvard Street, N.W., at the first-floor entrance of the residence, and at the basement door entrance. Officers knocked on the doors, identified themselves as police officers, and announced that they had a search warrant. There was no response. Officers waited approximately twenty seconds, and then forced open the first-floor door. Officers attempting to open the basement door were initially unable to open that door. Once the first-floor door was forced open, a pit bull dog charged the entry team, and one of the DEA agents shot and killed the dog. The bullet entered and exited the dog, went through the first floor, and ultimately lodged in the basement area. Officers entered the first floor and detained two individuals.

Another group of officers entered the basement and announced that they were police officers. The officers were attired in clothing with the word "police" prominently displayed, and with their police badges visible. As officers entered the basement area, the defendant was observed running from the kitchen area, into the back bedroom of the basement. Officers ordered the defendant to come from the back bedroom area of the basement. After several seconds the defendant walked out

of the back bedroom armed with a Raven .25 caliber semi-automatic handgun, which was loaded with eight rounds of ammunition. MPD Detective Allee Ramadhan, who was wearing an MPD windbreaker with the word "police" written on it, ordered the defendant to drop the weapon. The defendant refused to drop the weapon. Detective Ramadhan again ordered the defendant to drop the weapon. This time not only did the defendant not drop the weapon, but he raised it towards Detective Ramadhan. Detective Ramadhan then fired his service weapon at the defendant, striking him once in the lower abdomen. The defendant subsequently was taken to Washington Hospital Center's Medstar Unit, where he was treated. Recovered from the basement of 772 Harvard Street, N.W., were the following items: a Raven .25 caliber semi-automatic handgun located in the hall of the basement; a Hi-Point 9 millimeter handgun recovered from inside a safe in the basement kitchen; a Davis Industries 9 millimeter handgun recovered from inside the night stand in the bedroom the defendant was observed exiting; approximately 1628 grams of marijuana in 116 bags (most of the marijuana was found in the basement area); and $6,680.00 in U.S. Currency, a money counter, two scales, and several documents containing the defendant's name on them.

On April 7, 2006, the defendant pleaded guilty to a superseding information, charging him with Assaulting, Resisting, or Impeding Certain Officers or Employees, see 18 U.S.C. 111(a)(1); and Carrying a Pistol Without a License (Misdemeanor), see 22 D.C. Code §§ 4504(a), 4515. The plea was entered pursuant to Rule 11(c)(1)( C ), and the agreed upon sentence is 48 months of incarceration.

## DISCUSSION

The Government believes that the plea and sentencing arrangements reached by the parties are appropriate. The Government agrees with the Federal Sentencing Guidelines calculation that

appears in the Presentence Report ("PSR") for the federal conviction of Assaulting, Resisting, or Impeding Certain Officers or Employees. The guideline range is correctly set forth as 8 to 14 months of imprisonment. Moreover, the Government agrees with the PSR that the sentencing range for the local offense of Carrying a Pistol Without a License (Misdemeanor) is up to one year of incarceration.

Nonetheless, the agreed-to 48-month sentence of imprisonment is apt in this context. If the defendant was found guilty at trial, and each count was run consecutively, the guideline range would have been approximately 374 to 386 months of incarceration.

However, there are certain issues the government would have faced in prosecuting this case at that may have resulted in a protracted trial process. And, in all likelihood, the defendant would have appealed his convictions and raised legal issues which would have delayed the case from coming to a final resolution.

As such, resolving this case by the instant plea agreement is an efficient use of the Government's resources. The agreement limits the defendant's appellate issues, and allows both the Government and the Court to conserve resources. The agreement also caps the defendant's exposure to incarceration, which would have been vastly more substantial had the Government prevailed at trial. In addition, Detective Ramadhan is aware of the plea arrangement, and has informed the undersigned that he believes that the agreed-to sentence is fair and just. Finally, the Government notes that the defendant will be deported to Bolivia upon completion of his sentence.

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the Court sentence the defendant to 48 months of incarceration.

                  Respectfully submitted,

                  KENNETH L. WAINSTEIN
                  United States Attorney
                  DC Bar No. 451058

By:   ANTHONY SCARPELLI
        DC Bar No. 474711
        Assistant United States Attorney
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 353-1679

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading has been sent to Anthony Martin, Esquire, this the 12th day of June, 2006.

                  ANTHONY SCARPELLI
                  Assistant United States Attorney